

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

               Plaintiff,

    v.

D-1 SHERIF KHALIL,
D-2 ALI SAAD,
D-3 KURT SCHROEDER,
D-4 NAGI ABDELSYED, and
D-5 NANCY HARRIS,

               Defendants.

_____/

Case: 2:22-cr-20200
Judge: Goldsmith, Mark A.
MJ: Grand, David R.
Filed: 04-12-2022
INDI USA VS KHALIL ET AL (DP)

VIO: 18 U.S.C. § 371
      42 U.S.C. § 1320a-7b(b)
      18 U.S.C. § 1349
      18 U.S.C. § 1028A
      18 U.S.C. § 982

## **INDICTMENT**

THE GRAND JURY CHARGES:

### **General Allegations**

At all times relevant to this Indictment:

### **The Medicare Program**

1.    The Medicare program ("Medicare") was a federal health care program providing benefits to persons who were 65 years of age or older or disabled. Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and

Human Services. Individuals who received benefits under Medicare were referred to as Medicare "beneficiaries."

2.      Medicare was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b), and a "Federal health care program," as defined by Title 42, United States Code, Section 1320a-7b(f).

3.      Medicare was divided into four parts: hospital insurance (Part A), medical insurance (Part B), Medicare Advantage (Part C), and prescription drug benefits (Part D).

4.      Specifically, Medicare Part B covered the cost of physicians' services, medical equipment and supplies, and diagnostic laboratory services.

5.      CMS contracted with regional contractors to process and pay Medicare claims. Noridian Administrative Services, LLC ("Noridian") was the Medicare contractor that processed and paid claims involving Part B services, including diagnostic laboratory services, provided in California from at least January 2016 to at least April 2021.

6.      SafeGaurd Services, LLC, the Medicare zone program integrity contractor covering California in 2017, and Qlarant, the Medicare unified program integrity contractor covering California, thereafter, were responsible for performing investigations and audits designed to protect Medicare from fraud, waste, and abuse.

7.     Upon certification, health care providers, including clinics, physicians, and laboratories (collectively, "providers"), that provided services to Medicare beneficiaries were able to apply for a Medicare Provider Identification Number ("PIN") for billing purposes. In their enrollment application, providers were required to disclose to Medicare any person or company who held an ownership interest of 5% or more or who had managing control of the provider. A provider who was assigned a Medicare PIN and provided services to beneficiaries was able to submit claims for reimbursement to the Medicare contractor/carrier that included the PIN assigned to that provider.

8.     A Medicare claim was required to set forth, among other things, the beneficiary's name, the date the services were provided, the cost of the services, and the name and identification number of the physician or other provider who had ordered the services. When an individual provider was associated with a clinic and medically necessary services were provided at that clinic's location, Medicare Part B required that the provider number associated with the clinic be placed on the claim submitted to the Medicare contractor.

9.     By becoming a participating provider in Medicare, enrolled providers agreed to abide by the policies and procedures, rules, and regulations governing reimbursement, and furthermore, certified that they would not knowingly present, or cause to be presented, false and fraudulent claims.

10.     As a requirement to enroll as a Medicare provider, Medicare required providers to agree to abide by Medicare laws, regulations, and program instructions. Medicare further required providers to certify that they understood that a payment of a claim by Medicare was conditioned upon the claim and the underlying transaction complying with these laws, regulations, and program instructions, including the Federal Anti-Kickback Statute. Accordingly, Medicare would not pay claims procured through kickbacks and bribes.

11.     Providers could only submit claims to Medicare for reasonable and medically necessary services that they rendered.

12.     To receive reimbursement for a covered service from Medicare, a provider must have submitted a claim, either electronically or using a form (*e.g.*, a CMS-1500 form or UB-92), containing the required information appropriately identifying the provider, patient, and services rendered, among other things.

### Medicare Urine Drug Testing

13.     Under Medicare Part B, for a laboratory to properly bill and be paid by Medicare for laboratory testing the beneficiary must, among other things, qualify for the testing under Medicare's established rules and regulations. The testing also must be rendered according to Medicare's rules and regulations, and certain documents must be completed before a claim is submitted for reimbursement to Medicare.

14.     For a laboratory to properly bill and be paid by Medicare for urine drug testing, the urine drug testing must have been both reasonable and medically necessary. For example, urine drug testing was medically necessary if there was a specific and identified need for the type of testing performed. Regular, routine, or recreational drug screenings, however, were not reasonable or medically necessary. Further, the patient's medical record must have included documentation that fully supported the reasonableness of and medical necessity for the urine drug testing.

15.     Definitive, or confirmation, urine drug testing was the most complex urine drug testing available that not only determined if a substance was present, but also the quantity of the substance present.

16.     The reimbursement rates paid by Medicare to laboratories for performing definitive urine drug testing were determined by the number of classes of drugs tested. The highest reimbursement rate applied to the testing of 22 or more classes of drugs, referred to as "comprehensive" urine drug testing, and was billed under Healthcare Common Procedure Coding System G0483 ("Code G0483").

17.     Under Medicare rules and regulations, to be appropriately reimbursable, definitive urine drug testing needed to be specific and individualized. Routine definitive urine drug testing, such as ordering the same "comprehensive" definitive urine drug testing panels on 22 or more classes of drugs for every patient

in a physician's practice was not medically necessary and not appropriately reimbursable.

## The Relevant Laboratory

18.     Spectra Clinical Labs, Inc. ("Spectra"), was a California corporation doing business at 14601 S. Broadway, Gardena, CA 90248. Spectra was enrolled as a participating provider with Medicare and submitted claims to Medicare.

## Defendant and Other Entities and Individuals

19.     Defendant SHERIF KHALIL, a resident of Los Angeles County, California, and Co-Conspirator 1, jointly controlled, owned, and/or operated Spectra Acquisition Corporation ("SAC"), a Michigan corporation operating in the Eastern District of Michigan.

20.     Defendant SHERIF KHALIL, Co-Conspirator 1, and others controlled and operated, through the use of a straw owner, Top Tier Consultants L.L.C. ("Top Tier"), a Michigan company operating in the Eastern District of Michigan.

21.     Defendant NAGI ABDELSYED owned Spectra from at least January 2016 through April 2021. Defendant SHERIF KHALIL operated Spectra as its Chief Executive Officer and President from at least January 2016 through March 2020.

22.     Defendant ALI SAAD, a resident of Wayne County, Michigan, was a recruiter paid by SAC and Top Tier to obtain urine samples and physician orders for

urine drug testing to be billed to Medicare by Spectra using billing codes including Code G0483, regardless of medical necessity.

23. Defendant ALI SAAD was the owner and sole member of Adele Management L.L.C., organized in the Eastern District of Michigan, through which he received payments from SAC, Top Tier, and Spectra.

24. Defendant KURT SCHROEDER, a resident of Hillsborough County, Florida, was a recruiter paid by SAC and Top Tier to obtain urine samples and physician orders for urine drug testing to be billed to Medicare by Spectra using Code G0483, regardless of medical necessity.

25. Defendant KURT SCHROEDER was the owner and sole member of Ancillary MD Corp, incorporated in Florida, through which he received payments via both check and interstate wire from SAC, Top Tier, and Spectra.

26. Defendant NANCY HARRIS, a resident of Charlotte County Florida, was the owner of Charlotte Pain Management Clinic ("CPMC"), and provided Defendant KURT SCHROEDER with the access to CPMC for the purpose of allowing SCHROEDER to obtain urine samples and physician orders for urine drug testing to be billed to Medicare by Spectra using Code G0483, regardless of medical necessity.

27. SAC was incorporated on or before March 2014 in Oakland County, Michigan, and was controlled, owned, and/or operated by Defendant SHERIF

KHALIL, Co-Conspirator 1, and others as a management company that paid recruiters to obtain urine samples and physician orders for urine drug testing to be billed to Medicare by Spectra using billing codes including Code G0483, regardless of medical necessity. SAC Bank of America Account No. XXXXXXXX2581 was opened and operated in the Eastern District of Michigan.

28.     Top Tier was incorporated on or before February 2017 in Oakland County, Michigan, and was controlled and/or operated by Co-Conspirator 1 and others as a marketing company that paid recruiters to obtain urine samples and physician orders for urine drug testing to be billed to Medicare by Spectra using Code G0483, regardless of medical necessity. Top Tier Fifth Third Bank Account No. XXXXXX7183 was opened and held in the Eastern District of Michigan.

29.     Physician 1 was a physician employed by CPMC during the period between at least January 2016 and June 2019.

## COUNT 1
### (18 U.S.C. § 371—Conspiracy to Defraud the United States and Pay and Receive Health Care Kickbacks)
### D-1 SHERIF KHALIL
### D-2 ALI SAAD
### D-3 KURT SCHROEDER
### D-4 NAGI ABDELSYED

30.     Paragraphs 1 through 29 of the General Allegations section are re-alleged and incorporated by reference as though fully set forth herein.

31.    From in or around January 2016, and continuing through in or around April 2021, the exact dates being unknown to the Grand Jury, in Wayne and Oakland Counties, in the Eastern District of Michigan, and elsewhere, Defendants SHERIF KHALIL, ALI SAAD, KURT SCHROEDER, and NAGI ABDELSYED did willfully, that is, with the intent to further the objects of the conspiracy, and knowingly combine, conspire, confederate, and agree with each other, as well as with Co-Conspirator 1, and others known and unknown to the Grand Jury to commit certain offenses against the United States, that is:

a.    to defraud the United States by impairing, impeding, obstructing, and defeating through deceitful and dishonest means, the lawful government functions of the United States Department of Health and Human Services in its administration and oversight of Medicare, in violation of Title 18, United States Code, Section 371;

b.    to offer and pay remuneration, including kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind to any person to induce such person: (i) to refer an individual to a person for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole and in part under a Federal health care program, that is, Medicare; and (ii) to purchase, lease, order, or arrange for or recommend purchasing, leasing, or ordering any good, facility, service, or item for which payment may be made in whole or in part under

a Federal health care program, that is, Medicare, in violation Title 42, United States Code, Section 1320a-7b(b)(2)(A) and (B); and,

c.     to willfully solicit or receive remuneration, including kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind: (i) in return for referring an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program, that is, Medicare; and (ii) in return for purchasing, leasing, ordering, or arranging for or recommending purchasing, leasing, or ordering any good, facility, service, or item for which payment may be made in whole or in part under a Federal health care program, that is, Medicare, in violation of Title 42, United States Code, Section 1320a-7b(b)(1)(A) and (B).

### Purpose of the Conspiracy

32.     It was a purpose of the conspiracy for Defendants SHERIF KHALIL, ALI SAAD, KURT SCHROEDER, and NAGI ABDELSEYD, and their co-conspirators, including Co-Conspirator 1, to unlawfully enrich themselves by: (1) offering, paying, soliciting, and/or receiving kickbacks and bribes to ensure that Medicare beneficiaries' urine samples were referred by physicians to Spectra for urine drug testing; (2) submitting or causing the submission of claims to Medicare for urine drug testing of urine samples referred to Spectra as a result of the payment of kickbacks and bribes; and, (3) diverting proceeds of the fraud for the personal use

and benefit of the defendants and their co-conspirators.

**Manner and Means**

The manner and means by which the defendants and their co-conspirators sought to accomplish the purpose of the conspiracy included, among others, the following:

33.    Defendants SHERIF KHALIL, ALI SAAD, KURT SCHROEDER, and NAGI ABDELSYED, and their co-conspirators, including Co-Conspirator 1, devised and participated in a scheme to pay and/or receive illegal kickbacks and bribes in exchange for referring urine samples and physician orders for urine drug testing to Spectra for the purpose of billing Medicare.

34.    On or about March 2014, SAC was incorporated by Defendant SHERIF KHALIL, and thereafter operated by KHALIL and Co-Conspirator 1, for the purpose of facilitating and concealing kickbacks and bribes to Defendants ALI SAAD and KURT SCHROEDER, in exchange for the referral of urine samples and physician orders to Spectra, for the purpose of submitting claims for urine drug testing to Medicare.  In or around April 2014, Defendant SHERIF KHALIL opened SAC Bank of America Account No. XXXXXXXX2581.

35.    On or about February 2017, Top Tier was incorporated by a straw owner at the direction of Defendants SHERIF KHALIL and ALI SAAD, and Co-Conspirator 1, for the purpose of facilitating and concealing kickbacks and bribes to

Defendants ALI SAAD and KURT SCHROEDER, in exchange for the referral of urine samples and physician orders to Spectra, for the purpose of submitting claims for urine drug testing to Medicare.

36.     Between at least January 2016 and February 2020, Defendants SHERIF KHALIL and ALI SAAD, and Co-Conspirator 1, negotiated, calculated, and/or reconciled payments for illegal kickbacks and bribes paid to Defendants ALI SAAD and KURT SCHROEDER, for the referral of urine samples and physician orders to Spectra, for the purpose of submitting claims to Medicare.

37.     Between at least January 2016 and March 2020, Defendant SHERIF KHALIL transferred funds from Spectra Bank of Hope Account No. XXXXXXX0763 and J.P. Morgan Chase Account No. XXXXXXX5595, to SAC Bank of America Account No. XXXXXXXX2581 and Top Tier Fifth Third Bank Account No. XXXXXX7183, to fund illegal kickback and bribe payments made by Co-Conspirator 1 to Defendants ALI SAAD and KURT SCHROEDER, for the referral of urine samples and physician orders to Spectra, for the purpose of submitting claims for urine drug testing to Medicare.

38.     Between at least January 2016 and February 2020, Defendant SHERIF KHALIL and Co-Conspirator 1 paid Defendants ALI SAAD and KURT SCHROEDER via checks drawn on SAC Bank of America Account No. XXXXXXXX2581 and/or Top Tier Fifth Third Bank Account No. XXXXXX7183.

39.     On or before April 2020, Defendant NAGI ABDELSYED took control of day-to-day operations of Spectra from Defendant SHERIF KHALIL, and subsequently paid Defendants ALI SAAD and KURT SCHROEDER, via check and wire transfers, signed and ordered, respectively, by ABDELSYED and drawn directly on bank accounts held in the name of Spectra.

40.     Defendants SHERIF KHALIL, ALI SAAD, KURT SCHROEDER, and NAGI ABDELSYED, and Co-Conspirator 1, submitted and caused the submission of false and fraudulent claims to Medicare of at least $69 million for physician orders and urine drug testing services using Code G0483 that were obtained through illegal kickbacks and bribes.

### Overt Acts

41.     In furtherance of the conspiracy, and to accomplish its objects and purpose, at least one of the co-conspirators committed and caused to be committed in Wayne County and/or Oakland County, in the Eastern District of Michigan, and elsewhere, at least one of the following overt acts, among others:

42.     On or about the following dates, and in the amounts set forth, Defendant SHERIF KHALIL transferred funds from Spectra J.P. Morgan Chase Account No. XXXXXXX5595 to Top Tier Fifth Third Bank Account No. XXXXXX7183:

|    | DATE | AMOUNT |
|----|------|--------|
| a. | October 11, 2018 | $100,000 |
| b. | February 13, 2020 | $50,000 |

43.     On or about the following dates, and in the amounts set forth, Co-Conspirator 1, with the authorization of Defendant SHERIF KHALIL, ordered checks to be issued out of Top Tier Fifth Third Bank Account No. XXXXXX7183 to Defendant ALI SAAD and/or Adele Management L.L.C.:

|     | DATE | AMOUNT |
|-----|------|--------|
| a.  | October 13, 2017 | $34,249.82 |
| b.  | May 14, 2018 | $22,058.00 |
| c.  | February 14, 2020 | $14,879.03 |

44.     On or about the following dates, and in the amounts set forth, Co-Conspirator 1, with the authorization of Defendant SHERIF KHALIL, ordered checks to be issued out of Top Tier Fifth Third Bank Account No. XXXXXX7183 to Defendant KURT SCHROEDER and/or Ancillary MD Corp:

|     | DATE | AMOUNT |
|-----|------|--------|
| a.  | February 13, 2018 | $47,036.94 |
| b.  | February 14, 2020 | $22,541.81 |

45.     On or about the following dates, and in the amounts set forth, Defendant NAGI ABDELSYED ordered wire transfers from Spectra J.P. Morgan Chase Account No. XXXXX9690, to Ancillary MD Corp, controlled by Defendant KURT SCHROEDER:

|     | DATE | AMOUNT |
|-----|------|--------|
| a.  | May 29, 2020 | $15,000 |
| b.  | November 16, 2020 | $15,000 |
| c.  | April 21, 2021 | $15,000 |

46.     On or about June 12, 2020, Defendant NAGI ABDELSYED issued a
check, signed by him, from Spectra J.P. Morgan Chase Account No. XXXXX9690,
to Adele Management L.L.C., controlled by Defendant ALI SAAD.

All in violation of Title 18, United States Code, Section 371.

## COUNT 2
### (18 U.S.C. § 1349—Health Care Fraud and Wire Fraud Conspiracy)
### D-1 SHERIF KHALIL
### D-2 ALI SAAD
### D-3 KURT SCHROEDER
### D-4 NANCY HARRIS

47.     Paragraphs 1 through 29 of the General Allegations section of this
Indictment, and paragraphs 41 through 46 of the Overt Acts section of Count 1, are
re-alleged and incorporated by reference as though fully set forth herein.

48.     From at least January 2016, and continuing through in or around the
March 2020, the exact dates being unknown to the Grand Jury, in Wayne and
Oakland Counties, in the Eastern District of Michigan, and elsewhere, Defendants
SHERIF KHALIL, ALI SAAD, KURT SCHROEDER, and NANCY HARRIS did
willfully and knowingly combine, conspire, confederate, and agree with each other,
and others known and unknown to the Grand Jury, to commit certain offenses against
the United States, namely:

a.     having devised and intending to devise a scheme and artifice to defraud,
and for obtaining money and property by means of materially false and fraudulent
pretenses,  representations,  and  promises,  knowing  that  the  pretenses,

representations, and promises were false and fraudulent when made, knowingly transmitted and cause to be transmitted, by means of wire communication in interstate commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343; and

b.      to knowingly and willfully execute a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit program, in connection with the delivery of and payment for health care benefits, items, and services, in violation of Title 18, United States Code, Section 1347.

## Purpose of the Conspiracy

49.     It was a purpose of the conspiracy for Defendants SHERIF KHALIL, ALI SAAD, KURT SCHROEDER, and NANCY HARRIS, and their co-conspirators, to unlawfully enrich themselves by, among other things: (a) submitting or causing the submission of false and fraudulent claims to Medicare via interstate wire for claims based on kickbacks and bribes; (b) submitting or causing the submission of false and fraudulent claims to Medicare via interstate wire for services that were (i) medically unnecessary and/or (ii) not eligible for Medicare

reimbursement; (c) concealing the submission of false and fraudulent claims via interstate wire to Medicare and the receipt and transfer of the proceeds from the fraud; and (d) diverting proceeds of the fraud for the personal use and benefit of the defendants and their co-conspirators.

### Manner and Means

The manner and means by which the defendants and their co-conspirators sought to accomplish the purpose of the conspiracy included, among others, the following:

50.     Defendants SHERIF KHALIL and ALI SAAD, and other co-conspirators devised and participated in a scheme to pay illegal kickbacks and bribes to recruiters, including Defendants SAAD and KURT SCHROEDER, for obtaining urine samples and orders for definitive urine drug testing from physicians, and referring the same to Spectra, which urine drug tests were ultimately billed to Medicare, that were obtained through illegal kickbacks and bribes, medically unnecessary, and/or not eligible for Medicare reimbursement.

51.     Defendant SHERIF KHALIL, by and through Spectra, transferred funds to SAC and Top Tier, for the purpose of paying recruiters for obtaining and referring urine samples and orders for definitive urine drug testing, of 22 or more classes of drugs, to Spectra.

52.     Defendant SHERIF KHALIL, between at least January 2016 and February 2020, authorized payments to Defendants ALI SAAD and KURT SCHROEDER, for the solicitation of patients' urine samples to Spectra for urine drug testing of 22 or more classes of drugs.

53.     Defendant SHERIF KHALIL prepared Medicare reimbursement data monthly and provided it to Co-Conspirator 1, and others, to determine the appropriate amount to pay recruiters.

54.     Defendant SHERIF KHALIL controlled the day-to-day operations of Spectra, including billing or causing the billing of urine drug testing to Medicare and other insurers using Code G0483, submitted via interstate wire.

55.     Defendant ALI SAAD was hired by Defendant SHERIF KHALIL as a recruiter for Spectra and trained and supervised other recruiters, on behalf of Spectra, to obtain and refer to Spectra urine samples and physician orders for urine drug testing, particularly for orders requesting testing of 22 or more classes of drugs, often referred to as a "comprehensive" urine drug testing panel.

56.     In or around June 2018, Defendants SHERIF KHALIL and ALI SAAD retained a private compliance company which informed KHALIL and SAAD that performing definitive urine testing, particularly for testing urine samples for 22 or more classes of drugs, and the use of Code G0483 to bill claims to Medicare should

be rare and that Spectra was required to collect supporting documentation from physicians to support each claim submitted to Medicare under Code G0483.

57.     In 2019, over 70% of claims for urine drug testing submitted by Spectra to Medicare for reimbursement were for the purported urine drug testing of 22 or more classes of drugs, using Code G0483.

58.     In 2019, Spectra did not collect supporting documentation in support of all claims submitted to Medicare for urine drug testing panels for 22 or more classes of drugs, billed by Spectra using Code G0483.

59.     Defendant KURT SCHROEDER obtained urine samples and orders for urine drug testing from physicians employed by CPMC, including Physician 1.

60.     On or before 2016, Defendants NANCY HARRIS and KURT SCHROEDER obtained a stamp bearing the signature of Physician 1.

61.     On or before 2016, Defendant NANCY HARRIS granted Defendant KURT SCHROEDER permission to train medical assistants employed by CPMC to fill out all physician orders for urine drug testing, specifically ordering the definitive testing of 22 or more classes of drugs, regardless of medical necessity.

62.     Beginning in or around 2016, and continuing through at least June 2019, Defendant KURT SCHROEDER, with Defendant NANCY HARRIS's knowledge, routinely stamped physician orders for definitive urine drug testing for

22 or more drugs bearing the signature of Physician 1, without the permission of Physician 1, and regardless of medical necessity.

63.     Spectra submitted claims to Medicare via interstate wire using Code G0483 for urine drug testing on samples collected by Defendant KURT SCHROEDER, based on physician orders for definitive urine testing of 22 or more classes of drugs, stamped by SCHROEDER purporting to be the signature of Physician 1, without the permission of Physician 1.

64.     Between at least January 2016 and February 2020, Defendants ALI SAAD and KURT SCHROEDER received a monthly report via interstate wire documenting the reimbursements received by Spectra, based on urine samples and orders for definitive urine drug testing referred by SAAD and SCHROEDER to Spectra, which calculated their checks as a percentage of Spectra's reimbursements from Medicare and other insurers.

65.     Defendants SHERIF KHALIL, ALI SAAD, KURT SCHROEDER, and NANCY HARRIS, and others, submitted and caused the submission via interstate wire of false and fraudulent claims to Medicare of at least $69 million for services that were obtained through illegal kickbacks and bribes, were medically unnecessary, not eligible for Medicare reimbursement, and/or not provided as represented.

All in violation of Title 18, United States Code, Section 1349.

**Counts 3 and 4**
**Aggravated Identity Theft**
**(18 U.S.C. §§ 1028A and 2)**
**D-3 KURT SCHROEDER**

66.     Paragraphs 1 through 19 of the General Allegations section of this Indictment, paragraphs 41 through 46 of the Overt Acts section of Count 1, and paragraphs 48 and 65 of Count 2 are re-alleged and incorporated by reference as though fully set forth herein.

67.     On or about the dates set forth in the following paragraph, Defendant KURT SCHROEDER, aiding and abetting others, and aided and abetted by others known and unknown to the Grand Jury, did knowingly use, transfer, and possess, without lawful authority, the means of identification of another person, that is Physician 1, during and in relation to felony violation enumerated in 18 U.S.C. § 1028A(c), that is, conspiracy to commit health care fraud and wire fraud, in Wayne and Oakland Counties, in the Eastern District of Michigan, and elsewhere, in violation of 18 U.S.C. § 1349, as charged in Count 2 of this Indictment and incorporated herein, knowing that the means of identification belonged to another actual person.

68.     Specifically, Defendant KURT SCHROEDER stamped physician orders for "comprehensive" urine drug testing of 22 or more classes of drugs with a stamp bearing the signature of Physician 1, falsely representing himself to be Physician 1, without Physician 1's knowledge and consent, for the purpose of

concealing the scheme and artifice to defraud by means of wire communication in interstate commerce and defraud Medicare and obtain by means of false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of Medicare, as described in Count 2 of the Indictment. SCHROEDER did so on at least the following dates, concerning the enumerated Medicare beneficiaries:

| COUNT | DATE | MEDICARE BENEFICIARY |
|-------|------|----------------------|
| 3 | May 16, 2017 | R.L. |
| 4 | May 23, 2017 | K.G. |

In violation of Title 18, United States Code, Sections 1028A(a)(1) and 2.

## FORFEITURE ALLEGATIONS
### (18 U.S.C. §§ 982(a)(7)—Criminal Forfeiture)

69.     The allegations contained in Counts 1 and 2 of this Indictment are re-alleged and incorporated by reference as though fully set forth herein for the purpose of alleging forfeiture against defendants SHERIF KHALIL, ALI SAAD, KURT SCHROEDER, NAGI ABDELSYED, and NANCY HARRIS, pursuant to Title 18, United States Code, Section 982(a)(7).

70.     Pursuant to Title 18, United States Code, Section 982(a)(7), upon being convicted of the crimes charged in Counts 1 and 2 of this Indictment, the defendant shall forfeit to the United States any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense.

71.     <u>Money Judgment</u>:  Property subject to forfeiture includes, but is not limited to a forfeiture money judgment equal to the amount as is proved in this matter, representing the total amount of forfeitable proceeds as a result of defendant's violations as alleged in Counts 1 and 2 of this Indictment.

72.     <u>Substitute Assets</u>:  If the property described above as being subject to forfeiture, as a result of any act or omission of the defendant:

        a.  cannot be located upon the exercise of due diligence;

        b.  has been transferred or sold to, or deposited with, a third party;

        c.  has been placed beyond the jurisdiction of the Court;

    d.  has been substantially diminished in value; or

    e.  has been commingled with other property that cannot be

        subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section

853(p) as incorporated by Title 18, United States Code, Section 982(b) and/or Title

28, United States Code, Section 2461, to seek to forfeit any other property of

SHERIF KHALIL, ALI SAAD, KURT SCHROEDER, NAGI ABDELSYED, and

NANCY HARRIS, up to the value of such property.

                            THIS IS A TRUE BILL.

                            s/Grand Jury Foreperson
                            Grand Jury Foreperson

DAWN N. ISON
UNITED STATES ATTORNEY

JOSEPH S. BEEMSTERBOER
Acting Chief
Criminal Division, Fraud Section
U.S. Department of Justice

DUSTIN DAVIS
Acting Chief, Health Care Fraud Unit
Criminal Division, Fraud Section
U.S. Department of Justice

REGINA MCCULLOUGH
Chief, Health Care Fraud Unit
United States Attorney's Office
Eastern District of Michigan

s/Shankar Ramamurthy
SHANKAR RAMAMURTHY
STEVEN SCOTT
Trial Attorneys
Criminal Division, Fraud Section
U.S. Department of Justice
211 W. Fort Street, Suite 2001
Detroit, MI 48226
Phone: (202) 924-5368
Email: shankar.ramamurthy@usdoj.gov

Dated: April 12, 2022

| United States District Court<br>Eastern District of Michigan | **Criminal Case Cover Sheet** | Case Number |
|---|---|---|

NOTE: It is the responsibility of the Assistant U.S. Attorney signing this form to complete it accurately in all respects.

| Companion Case Information | Companion Case Number: 21-cr-20484 |
|---|---|
| This may be a companion case based upon **LCrR 57.10 (b)(4)**[1]: | Judge Assigned: Edmunds |
| ☒ Yes      ☐ No | AUSA's Initials: _SR_ |

Case Title: USA v.  Bakri

County where offense occurred :  Wayne, Oakland

Check One:      ☒Felony            ☐Misdemeanor            ☐Petty

   ✓ Indictment/_____Information --- **no** prior complaint.
   _____Indictment/_____Information --- based upon prior complaint [**Case number:**             ]
   _____Indictment/_____Information --- based upon **LCrR 57.10 (d)** *[Complete Superseding section below].*

**Superseding Case Information**

Superseding to Case No: _____      Judge: _____

☐ Corrects errors; no additional charges or defendants.
☐ Involves, for plea purposes, different charges or adds counts.
☐ Embraces same subject matter but adds the additional defendants or charges below:

| **Defendant name** | **Charges** | **Prior Complaint (if applicable)** |
|---|---|---|

**Please take notice that the below listed Assistant United States Attorney is the attorney of record for the above captioned case.**

April 12, 2022
Date

Shankar Ramamurthy
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI  48226-3277
Phone: (202) 924-5268
Fax:
E-Mail address: Shankar.Ramamurthy@usdoj.gov
Attorney Bar #:  6306790 (IL)

[1] Companion cases are matters in which it appears that (1) substantially similar evidence will be offered at trial, or (2) the same or related parties are present, and the cases arise out of the same transaction or occurrence. Cases may be companion cases even though one of them may have already been terminated.