UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

              Plaintiff,                         Case No. 22-cr-20200

v.

                                       HON. MARK A. GOLDSMITH
SHERIF KHALIL et al.,

              Defendants.
_____/

## OPINION & ORDER
## DENYING DEFENDANT SHERIF KHALIL'S MOTION FOR DISCOVERY (Dkt. 129)

Defendant Sherif Khalil and others have been indicted for health care fraud conspiracy involving alleged kickbacks and fraudulent billings for medical testing. A jury trial was set for March 26, 2024, but some two months before, Khalil filed a motion for discovery, contending that the Government impermissibly relied on privileged attorney-client communications in its prosecution of this case. See Mot. at 1 (Dkt. 129). However, Khalil does not argue that the Government invaded his attorney-client privilege; rather, he claims that the Government invaded the privilege held by a company that he partially owned, which he says acquired another company that was allegedly used to accomplish the fraud. As explained below, Khalil has no standing to seek any relief for the violation of a privilege that he does not hold; thus the discovery he seeks cannot be of any assistance to him. The Court denies Khalil's motion.[1]

---

[1] Because oral argument will not aid the Court's decisional process, the motion will be decided based on the parties' briefing. See E.D. Mich. LR 7.1(f)(2); Fed. R. Civ. P. 78(b). The briefing also includes the Government's response to the motion (Dkt. 141) and Khalil's reply (Dkt. 145).

## I. BACKGROUND

The parties agree on the facts relevant to deciding the motion. Khalil has held a 25% interest in Spectra Acquisition Corporation (SAC) since 2014. Mot. at 4–5. Khalil says that, at some point, SAC acquired a 90% interest in Spectra Clinical Labs, Inc. (SCL), acted as SCL's management company, conducted its marketing, and controlled its operations. Id. at 5. The Government denies that SAC ever actually acquired SCL. Response at 3. But either way, the indictment alleges that SAC and SCL were utilized by Khalil and others to engage in fraudulent Medicare billings. See Am. Indictment ¶ 27 (Dkt. 18).

In 2016, Co-Defendant Ali Saad, an SAC employee, consulted with Keith Soltis, an attorney from the law firm of Kotz Sangster Wysocki P.C., about "Spectra's corporate structure and its relationship with marketers." Mot. at 5, 8. According to Khalil, Saad told Soltis he was consulting with him on behalf of "Spectra" without distinguishing between SAC and SCL. Id. at 5. Neither Saad nor Soltis believed that Soltis represented Saad as an individual. Id.

In the same year, the Government began a criminal investigation into SCL's Medicare billing practices. Id. at 6. In March 2021, at the Government's request, Saad signed a waiver of all attorney-client privilege between Soltis and himself. Mot. at 7–8; Response at 4. The Government then secured a grand jury subpoena commanding Soltis to produce documents regarding SCL, with which Soltis complied. Mot. at 8. Soltis also testified before the grand jury. Id. at 11.

Khalil argues that Soltis had an attorney-client relationship with SAC "for which Saad did not and could not waive privilege." Mot. at 12–13. He claims that the Government violated the privilege by subpoenaing documents regarding SAC and SCL and by presenting Soltis's testimony to the grand jury. Id. Khalil requests discovery of materials that "will support a motion

2

to remedy the Government's intentional or reckless intrusion upon the attorney-client privilege."[2]

Id. at 13.  But Khalil does not explain how a violation of SAC's attorney-client privilege with

Soltis creates any basis of relief for him.  For this reason, Khalil is not entitled to discovery.

## II. ANALYSIS

Khalil does not claim that he had an attorney-client relationship with Soltis or that his

own attorney-client privilege was violated.  Instead, Khalil's motion is based on an alleged

violation of SAC's attorney-client privilege.  See Mot. at 13 ("Production is necessary to

document both the scope of the government's violation of SAC's attorney-client privilege and

the flagrancy of the violation.").  Khalil's declaration says that he "understood that SAC and SCL

had an attorney-client relationship with Soltis."  Khalil Decl. ¶ 8 (Dkt. 130).  The declaration

says nothing about Khalil having  an attorney-client privilege of his own with Soltis.

The Government notes this fact and argues that because "Khalil does not attempt to

_____

[2] Khalil seeks nine broad categories of discovery: (i) all subpoenas served by the Government on attorney Soltis and/or Kotz Sangster Wysocki PC in connection with this case; (ii) all records of communications between the Government and Soltis (and/or his attorney Shawn Cioffi) concerning the above-referenced subpoena(s), Soltis's legal representation of SCL, SAC, and/or Adele Management LLC, and/or any waiver of attorney-client privilege as to communications with representative(s) of any or all of these entities including Saad; (iii) all records of communications between the Government and Saad and/or his attorney Patrick Hurford regarding Soltis; (iv) all records of communications between the Government and Nagi Abdelsayed and/or his attorney Michael Khouri regarding Soltis; (v) all records of communications between the Government and Youssef Bakri and/or his attorneys Michael Cafferty, Clyde Pritchart, and Mark Krieger regarding Soltis; (vi) all records of communications between the Government and Ali Bakri and/or his attorney William Swor regarding Soltis; (vii) all records of communications between the Government and Andrea Merritt regarding Soltis; (viii) all records of communications by the Government regarding authorization by the Assistant Attorney General and/or the Deputy Assistant Attorney General to issue subpoenas to Soltis; and (ix) transcripts of all proceedings before the 2021 Grand Jury, which heard evidence in this case, and the 2022 Grand Jury, which heard evidence and returned the Indictment in this case, including all testimony, legal instructions, questions by grand jurors and responses to such questions, and identification of any transcripts from the 2021 Grand Jury that were provided to or summarized for the 2022 Grand Jury.  See Mot. at 1–2.

demonstrate a personal attorney client relationship," he has no "standing."  Response at 7.  The Government is correct.   Khalil would only have standing if he had asserted a violation of his own attorney-client privilege—something he fails to do.

The threshold standing requirement for the attorney-client privilege is that the claimant of the privilege be "the client."  See United States v. Patej, 95 F. App'x 750, 752 (6th Cir. 2004). In Patej, the Sixth Circuit rejected an effort by the defendant in a civil tax collection case to assert the attorney-client privilege of her former husband over communications between him and his attorneys.  Id. at 751–52.  The court of appeals held that "the district court correctly concluded that Patej lacked standing to assert [her former husband's] privilege in this case because she was not the client."  Id. at 752.

Standing in the context of attorney-client privilege is analogous to standing in the Fourth Amendment context, where courts routinely find that defendants do not have standing to object to searches of vehicles or premises owned by other individuals.  See, e.g., United States v. McKenzie, No. 21-3587, 2022 WL 1744500, at *4 (6th Cir. May 31, 2022) ("Th[e] issue [of Fourth Amendment standing] comes up often, as it does here, when the passenger of a vehicle claims a Fourth Amendment violation.").  In United States v. Rogers, 97 F.4th 1038, 1040 (6th Cir. 2024), the defendant argued that evidence collected from his girlfriend's car violated his rights.  The court held that the defendant had no legitimate expectation of privacy in his girlfriend's vehicle, explaining that "[the defendant] must assert that his own Fourth Amendment rights were infringed . . . . Fourth Amendment rights 'may not be vicariously asserted.'"  Id. at 1042 (quoting Alderman v. United States, 394 U.S. 165, 174 (1969)) (emphasis in original).

 The same principle applies here.  Khalil cannot complain about any possible violation of SAC's attorney-client privilege.  He can only complain about a violation of his own privilege—

4

and he fails to do so.

Khalil argues that, as the owner of SAC, he has standing to assert SAC's attorney-client privilege on its behalf.  See Mot. at 18.  As to this point, Khalil may be correct.  See Commodity Futures Trading Comm'n v. Weintraub, 471 U.S. 343, 348 (1985) (assertion and waiver of corporation's privilege normally exercised by officers and directors).  But this argument is irrelevant.  Khalil's  standing to assert SAC's attorney-client privilege on its behalf does not mean that SAC's privilege extends to Khalil.  See United States v. Merida, 828 F.3d 1203, 1210 (10th Cir. 2016) ("[A]ny privilege resulting from communications between corporate officers and corporate attorneys concerning matters within the scope of the corporation's affairs and the officer's duties belongs to the corporation and not to the officer.") (punctuation modified, emphasis omitted).  Here, Khalil does not argue that he had any communications with Soltis, and he certainly does not say that any communication was protected by any personal attorney-client privilege he had with Soltis.  Thus, whatever power he has to protect SAC's attorney-client privilege creates no personal privilege  applicable to him.

Khalil argues that the Government's alleged invasion of SAC's attorney-client relationship should lead to suppression of certain materials, disqualification of the current prosecution team, and possible dismissal of the indictment.  See Mot. at 19–20.  But the cases Khalil relies upon do not help him because none involves a remedy for a party who does not hold the privilege that was allegedly invaded.

 Khalil cites Gaetano v. United States, 942 F.3d 727, 732–733 (6th Cir. 2019) in support of the proposition that evidence obtained in violation of a defendant's rights should be suppressed.  See Mot. at 19.  In Gaetano, the plaintiffs sought injunctive relief preventing the Government from discussing privileged information with their former attorney during a tax audit.

Gaetano, 942 F.3d at 729–730.  Unlike Khalil, the plaintiffs in Gaetano were the holders of the claimed attorney-client privilege.  Id. at 729.  Nothing in Gaetano suggests any departure from the bedrock principle that a criminal defendant can only seek to exclude evidence secured in violation of that defendant's rights.

Khalil also argues that Gaetano supports a motion to dismiss for "outrageous government conduct in violation of the Fifth Amendment."  Mot. at 20.  As an initial matter, the availability of any such defense is dubious, given the Sixth Circuit's "skepticism about the continued vitality of the 'outrageous government conduct' defense," and its observation that "[v]anishingly few decisions have found a due process violation for government intrusion into the attorney client relationship."  Gaetano, 942 F.3d at 732.  More to the point here:  Nothing in Gaetano supports use of this dubious doctrine by a party whose personal rights were not violated.

Khalil also cites In re Grand Jury Subpoenas, 454 F.3d 511 (6th Cir. 2006), which addressed how documents covered by a grand jury subpoena should be reviewed for privilege. The intervenor, who sought the court's ruling on the appropriate procedure, was the claimant of the privilege.  See id. at 514. ("Winget filed a motion . . . to intervene and to modify the subpoenas in order to preserve privilege. In this motion, he claimed that some of the records . . . were protected by Winget's personal attorney-client or work-product privileges.") (emphasis in original).  This case does not help Khalil overcome his standing issue.

Khalil argues that the Court can dismiss an indictment because of prejudicial conduct amounting to non-constitutional error that occurred before the grand jury.  See Mot. at 20.  He cites Bank of Nova Scotia v. United States, 487 U.S. 250, 256 (1988), which holds that an indictment can be subject to dismissal due to non-constitutional error in limited circumstances.

But nothing in <u>Bank of Nova Scotia</u> suggests that dismissal could be sought by a defendant whose personal rights were not violated.

Lastly, Khalil argues that the Court can dismiss a grand jury indictment under its supervisory power, citing <u>United States v. Streebing</u>, 987 F.2d 368, 371 (6th Cir. 1993) and <u>United States v. Smith</u>, 687 F.2d 147, 152–153 (6th Cir. 1982).  <u>See</u> Mot. at 21.  While both cases address the strict standard required for a court to dismiss an indictment under its supervisory power, neither case addressed a situation where the rights of others—not the defendant's rights—were violated. <u>See</u> <u>Streebing</u>, 987 F.2d at 371–372; <u>Smith</u>, 687 F.2d at 152–153.

Because Khalil has not demonstrated that his own rights have been violated, it necessarily follows that he is not entitled to discovery.  Discovery in a criminal case  must be tethered to some defense assertable by a defendant.  Generally, there are three governing rules that "'exhaust the universe of discovery to which [a] defendant is entitled.'"  <u>United States v. Watson</u>, 787 F. Supp. 2d 667, 672 (E.D. Mich. 2011) (quoting <u>United States v. Presser</u>, 844 F.2d 1275, 1285 n.12 (6th Cir. 1988)).  The three governing rules are Federal Rule of Criminal Procedure 16, the <u>Brady</u> doctrine, and the Jencks Act, 18 U.S.C. § 3500.  <u>Id.</u>; Mot. at 13; Response at 12.  Without a claim that his own rights have been violated, however, Khalil is not entitled to discovery under any of the rules.

Under Rule 16, the Government must disclose "only specific categories of evidence . . . . which are within the custody or control of the government and which are material to the defense or intended for use by the government in its case-in-chief at trial."  <u>Presser</u>, 844 F.2d at 1284–1285.  Importantly, "the discovery afforded by Rule 16 is limited to the evidence referred to in its express provisions."  <u>Id.</u> at 1285.  Because the discovery sought by Khalil is not material to his

defense or intended for use by the Government in its case-in-chief at trial, Rule 16 does not help Khalil.

The <u>Brady</u> doctrine requires the Government to disclose "evidence that is favorable to the accused and material to guilt or punishment." <u>Presser</u>, 844 F.2d at 1281. Under <u>Brady</u>, "the government typically is the sole judge of what evidence in its possession is subject to disclosure." <u>Presser</u>, 844 F.2d at 1281. Here, the Government has stated that it "has turned over all exculpatory and impeachment materials to the Defendants of which it is currently aware." Response at 15. Khalil has not offered any evidence to the contrary, or explained how the materials sought are exculpatory or how the Government can be compelled to turn any such materials over on a pretrial basis, especially in light of the Sixth Circuit's pronouncements in <u>Presser</u> against compelling the Government to do that. <u>See</u> <u>Presser</u>, 844 F.2d at 1282–1284. For these reasons, the materials sought by Khalil are not discoverable under <u>Brady</u>.

The Jencks Act is also no help to Khalil. "The Jencks Act generally requires the government, on motion of a defendant, to produce statements in its possession of witnesses who testify at a trial." <u>United States v. Short</u>, 671 F.2d 178, 185 (6th Cir. 1982). Khalil mentions the Jencks Act briefly in his motion but does not develop any argument for why the information he seeks is discoverable under the Act. In fact, the Jencks Act requires the Government to turn over a witness's pretrial statements only after the witness testifies. <u>See</u> <u>Presser</u>, 844 F.2d at 1283 ("The clear and consistent rule of this circuit is that the intent of Congress expressed in the [Jencks] Act must be adhered to and, thus, the government may not be compelled to disclose Jencks Act material before trial."). Because Khalil does not explain how the discovery he seeks is covered by the Jencks Act, he is not entitled to discovery on this ground. <u>See</u> <u>United States v. Mungarro</u>, No. 07-

20076, 2020 WL 1933816, at *3 (E.D. Mich. Apr. 22, 2020) ("It is not the court's responsibility to craft winning legal arguments for [the parties].").

Lastly, Khalil states that he seeks a Federal Rule of Criminal Procedure Rule 17 subpoena for the requested materials if the Court finds that the materials sought are not discoverable.  Mot. at 14 n.24.  Under Rule 17, a court "may direct production of designated items in court before trial or before they are to be offered in evidence . . . ."  United States v. Llanez-Garcia, 735 F.3d 483, 486–487 (6th Cir. 2013) (punctuation modified).  As the Government correctly points out, the discovery Khalil seeks does not constitute admissible evidence at trial or hearing and is, therefore, not covered by Rule 17.  Response at 19.

### III.  CONCLUSION

For the foregoing reasons, the Court denies Khalil's motion for discovery (Dkt. 129).

SO ORDERED.

Dated:  May 7, 2024                              s/Mark A. Goldsmith
Detroit, Michigan                                MARK A. GOLDSMITH
                                                 United States District Judge