UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

           Plaintiff,                            Case No. 22-cr-20200

v.

                                        HON. MARK A.

GOLDSMITH
SHERIF KHALIL et al.,

           Defendants.

_____/

## OPINION & ORDER
## GRANTING DEFENDANTS' MOTION FOR A BILL OF PARTICULARS
## (Dkt. 80)

This criminal case involves multiple Defendants, all of whom have been charged with various healthcare-related offenses.  Defendants have filed a motion for a bill of particulars (Dkt. 80), which the Government opposes (Dkt. 93).[1]  A hearing on the motion was held on January 24, 2024.  For the reasons discussed below, the Court grants the motion.

---

[1] Defendant Sherif Khalil filed a motion for a bill of particulars (Dkt. 80).  Defendants Kurt Schroeder and Ali Saad filed notices of joinder concurring in the relief sought in the motion (Dkts. 83, 86).  Defendant Nancy Harris filed a motion to adopt Khalil's motion for bill of particulars and motion to dismiss Count Two (Dkt. 82), which the Court granted in a separate opinion and order issued today.  The Government did not object to the joinder notices or oppose the motion to adopt. The Court treats the motion for a bill of particulars as if filed on behalf of Khalil, Schroeder, Saad, and Harris.

# I.    BACKGROUND

In April 2022, the Government filed its amended indictment, which charges Defendants with four counts of healthcare related offenses.  <u>See</u> Am. Indictment (Dkt. 18).   Count One charges Khalil, Saad, Schroeder, and Abdelsyed with a conspiracy to defraud the United States and pay and receive health care kickbacks under 18 U.S.C. § 371, in violation of the Anti-Kickback Statute (AKS), 42 U.S.C. § 1320a-7b.  Am. Indictment ¶¶ 30–46.  Count Two charges Khalil, Saad, Schroeder, and Harris with a conspiracy to commit health care fraud and wire fraud in violation of 18 U.S.C. § 1349.  <u>Id.</u> ¶¶ 47–65.  Counts Three and Four charge Schroeder with aggravated identity theft in violation of 18 U.S.C. §§ 1028A and 2.  <u>Id.</u> ¶¶ 66–68.[2] Abdelsyed has pleaded guilty to Count One. <u>See</u> Plea Agreement (Dkt. 101).

Because the Court has described the central facts alleged in the amended indictment in a separate opinion and order issued today, it need not do so again for purposes of the present motion.

# II.    ANALYSIS

Defendants' motion for a bill of particulars requests five categories of additional details regarding the charges, each discussed below.  The Government argues that the motion should be denied because the amended indictment contains a

---

[2] The title of Counts 3 and 4 cites to "18 U.S.C. §§ 1028A and 2" while ¶ 68 of the amended indictment cites to "18 U.S.C. 1028A(a)(1) and (2)."

detailed explanation of the theory of the case and provides Defendants with sufficient notice of the charges against them.  Gov't Resp. to Mot. at 6.  In addition, the Government contends that it has provided Defendants with significant, well-organized discovery supporting and demonstrating the Defendants' criminal conduct.  Id. at 6–8.  Defendants argue that "each of the requested particulars is necessary for [Defendants] to prepare [their] defense and to avoid surprise at trial."  Br. Supp. Mot. at 7.  For the following reasons, the Court agrees with Defendants and finds that their motion for a bill of particulars should be granted.

Under Federal Rule of Criminal Procedure 7(c)(1), an indictment must include a "plain, concise, and definite written statement of the essential facts constituting the offense charged."  Fed. R. Crim. P. 7(c)(1).  An indictment is sufficient if it "first, contains the elements of the offense charged and fairly informs a defendant of the charge against which [he or she] must defend, and, second, enables [the defendant] to plead an acquittal or conviction in bar of future prosecutions for the same offense." Hamling v. United States, 418 U.S. 87, 117 (1974).

Although an indictment may be legally sufficient for purposes of Rule 7(c) and Hamling, it may nonetheless fail to provide enough detail to enable a defendant to meaningfully prepare for trial.  See United States v. Kestner, No. 3:19-cr-00095-4, 2022 WL 526487, at *3 (M.D. Tenn. Feb. 22, 2022) (explaining that "[w]hether to order a bill of particulars raises a somewhat different question than whether the

indictment is legally sufficient") (punctuation modified).  "A bill of particulars is the proper remedy where an indictment properly charges each of the essential elements of the offense, but does not inform the accused with sufficient particularity as to what [they] will have to defend against at trial."  United States v. Griesbeck, No. 10–20108–BC, 2011 WL 528579, at *4 (E.D. Mich. Feb. 8, 2011).

Under Federal Rule of Criminal Procedure 7(f), a court may direct the Government to file a bill of particulars.  "The purpose of a bill of particulars is to give a defendant key factual information not contained in the indictment, so as to enable him or her to prepare a defense and avoid surprise at trial."  United States v. Page, 575 F. App'x 641, 643 (6th Cir. 2014).  The Sixth Circuit has stated that, therefore, "the test in ruling on a motion for a bill of particulars is whether providing such details is necessary to the preparation of the defense and avoidance of prejudicial surprise."  United States v. Musick, 291 F. App'x 706, 724 (6th Cir. 2008).

A bill of particulars is not intended as a means for the defendant to learn the Government's theory of the case.  Id. at 724.  In deciding a motion for a bill of particulars, courts consider "the complexity of the charges, the clarity of the indictment, and the degree of discovery available to the defense absent a bill of particulars."  United States v. McQuarrie, No. 16-cr-20499, 2018 WL 372702, at *5 (E.D. Mich. Jan. 11, 2018) (punctuation modified).  The decision to grant or deny a

4

motion for a bill of particulars lies within the sound discretion of the trial court. United States v. Rey, 923 F.2d 1217, 1222 (6th Cir. 1991).

These factors weigh in favor of granting Defendants' motion. The charges in this case are complex, with four counts brought against five Defendants. The indictment alleges two conspiracies, each against a separate set of Defendants, which the Government has described as "dual-object conspiracies." Gov't Resp. at 2. The conspiracies are alleged to have covered a period of at least four years. Am. Indictment ¶¶ 31, 48.

The Government has produced 192,132 electronic documents totaling nearly one million pages, and an additional 893 GB of forensic images which, if printed, would comprise more than one million additional pages of documents. Br. Supp. Mot. at 5. The Government argues that "[i]f a defendant has received extensive discovery . . . a trial court's denial of a motion for bill of particulars does not hinder the defendant's ability to properly prepare for trial." Gov't Resp. at 7 (citing United States v. Lusk, No. 21-cr-20307, 2023 WL 145002, *4 (E.D. Mich. Jan. 10, 2023)).

But such voluminous discovery can also have the deleterious effect of making it harder for Defendants to prepare for trial. See United States v. Blair, No. CR ELH-19-00410, 2021 WL 424411, at *6 (D. Md. Feb. 5, 2021) ("The fact that the government has provided significant discovery is not dispositive . . . . Indeed, the voluminous discovery . . . adds to the defendant's challenge."); United States v.

Perry, 30 F. Supp. 3d 514, 524 (E.D. Va. 2014) ("[W]ithout further particularization, Defendants will be left to sift through thousands of [documents] covering a nearly four-year period with limited, if any, ability to reasonably identify which documents the Government will attempt to prove false at trial.").

Defendants' motion for a bill of particulars requests five categories of additional details:

1. All "laws," "rules," "regulations," and "policies and procedures" in effect during the relevant period stating that payments to marketers for obtaining medical testing orders and patient samples from physicians are illegal kickbacks and bribes as alleged in Counts One and Two, and all such "laws," "rules," "regulations," and "policies and procedures" with which providers were required to comply as a condition of Medicare reimbursement as alleged in Counts One and Two. Am. Indictment ¶¶ 9–10, 13, 17;

2. All "dishonest and deceitful means" by which the [D]efendants conspired to defraud the United States as alleged in Count One. Id. ¶ 31(a);

3. All "materially false and fraudulent pretenses, representations, and promises" by which the defendant's conspired to commit wire fraud and health care fraud as alleged in Count Two. Id. ¶¶ 48(a), 48(b);

4. All "false and fraudulent" claims that were "medically unnecessary" or "not provided as represented" as alleged in Count Two. Id. ¶¶ 49-50, 65; and

5. All "documents," "documentation," and "supporting documentation" that providers were required to complete, maintain, and collect as alleged in Counts One and Count Two. Id. ¶¶ 13-14, 56, 58.

Mot. at 1–2.  Considering the factors above, the Court finds that more specific information is necessary in all five categories so that Defendants can properly prepare for trial.

First, Defendants argue that they cannot prepare for trial without knowing the specific laws, rules, regulations, and policies with which they allegedly failed to comply.  Br. Supp. Mot. at 7–8.  In response, the Government contends that "Defendants are on notice of . . . their conduct that the [G]overnment alleges is criminal, and two federal criminal statutes they are alleged to have violated."  Gov't Resp. at 9.  The Government also notes that the amended indictment cites to guidance provided by Medicare rules and regulations specific to comprehensive urine testing.  Id.  The Government cites United States v. Sachakov, 812 F. Supp. 2d 198 (E.D.N.Y. 2011), where the court rejected the defendant's request for "a list of all allegedly fraudulent claims submitted to Medicare, including the basis for the government's assertion that they are fraudulent and the specific Medicare rule, regulation, policy or procedure of the private insurer the defendant purportedly violated."  Id. at 214–215.

The Court agrees with the Defendants that more information regarding the laws, rules, regulations, and policies is warranted.  Count One charges "deceitful and dishonest means" that were used to impede Medicare administration and oversight in violation of 18 U.S.C. § 371, but it does not identify any specific violation of a

rule or regulation.  Am. Indictment ¶ 31.  The same is true with respect to the Government's theory that paying recruiters or marketers to obtain testing orders and patient samples was unlawful.  Count Two alleges that "Spectra was required to collect supporting documentation from physicians" for certain claims but does not specify the source of this requirement.  Id. ¶¶ 56–58.

To prepare for trial, Defendants need to know which laws, rules, regulations, and policies the Government alleges they violated or which otherwise form the basis for imposing criminal responsibility.  Citing to Medicare guidance encompassing nearly forty chapters and thousands of pages is not enough to provide Defendants with proper notice.  Further, the Government's reliance on Sachakov is misguided.  Sachakov involved only one Defendant and less complex charges—one count of health care fraud and five counts of health care false statements, in comparison to the five Defendants, two conspiracies, and multiple federal statutes at issue here.  Sachakov, 812 F.Supp.2d at 204.   The Government must disclose what law, rule, regulation, or other authority it will claim establishes or bears upon Defendants' culpability under Counts One and Two.

Second, Defendants argue that they need notice of the "deceitful and dishonest means" by which they allegedly defrauded the United States.  Br. Supp. Mot. at 8.  Defendants cite United States v. Vasquez-Ruiz, 136 F. Supp. 2d 941 (N.D. Ill. 2001), where the court held that the defendant was "entitled to know prior to trial certain

basic matters," including "the records claimed to include false entries, and any allegedly fraudulent bills to insurers." Id. at 943.  The court explained that "[t]he defense should not be left to its own devices and a sifting of the voluminous materials that have been provided in order to divine the particulars of these critical allegations, which have not yet been disclosed." Id.

The Government counters that "each false and fraudulent claim to Medicare was an attempt by the Defendants to be paid by dishonest and deceitful means" and that the claims data already produced is sufficient.  Gov't Resp. at 10–11.  The Government claims that Vasquez-Ruiz "does not dictate a different result" but offers no supporting explanation.  The Court agrees with Defendants, finding that the present situation is similar to Vasquez-Ruiz, and that the discovery produced by the Government is too voluminous to be of assistance to Defendants without further specification.[3]  The Government must disclose the precise manner in which the claims constituted the use of "dishonest and deceitful means" and identify the specific claims it will assert involve such dishonesty.

Third, Defendants ask for the Government to specify all "materially false and fraudulent pretenses, representations, and promises by which the [D]efendant's (sic) conspired to commit wire fraud and health care fraud."  Br. Supp. Mot. at 9.  In

---

[3] The discovery at issue here is even more voluminous than in Vasquez-Ruiz.  In the present case, nearly one million pages of documents have been produced to Defendants, as compared to only 17,000 pages in Vasquez-Ruiz.  See Vasquez-Ruiz, 136 F.Supp.2d at 943.

response, the Government argues that "a defendant is not entitled to a bill of particulars with respect to information which is available through other sources." Gov't Resp. at 11 (citing <u>United States v. Hall</u>, 261 F.Supp.3d 812, 818 (E.D. Mich. 2017)). Stated differently, the Government argues that they have already produced the information Defendants request through discovery. But as the Court previously explained, providing Defendants with a needle in a haystack is akin to not providing them with a needle at all. The Government must disclose all alleged materially false and fraudulent pretenses and representations that form the basis of Defendants' allegedly illegal conduct.

Fourth, Defendants request notice of the specific false and fraudulent claims for services that were medically unnecessary or not provided. Br. Supp. Mot. at 9–10. They contend that Count Two alleges four different theories of fraud and "presents the [D]efendants with countless moving targets against which they must defend." <u>Id.</u> at 9. The Government argues that the Medicare claims data provided to Defendants, in addition to their ability to "interview anyone they like," is sufficient. Gov't Resp. at 12. This argument fails for the same reasons it failed with respect to the second and third categories, described above. The Government must disclose the allegedly false and fraudulent claims for service.

Fifth, Defendants contend that they need to know which documents, documentation, and supporting documentation they were required to complete and

collect.   Br. Supp. Mot. at 10.   The Government argues that "[t]he Amended Indictment makes clear that the type of documentation absent from the files is support for the purported medical necessity for the tests ordered."  Gov't Resp. at 12.  As explained with respect to the first category, the amended indictment does not provide Defendants with enough notice of what supporting documentation they were required to collect.  A description of the forms of supporting documentation required by statute or regulation will suffice to allow Defendants to adequately prepare for trial.  The Government must make this disclosure, as well.

### III.   CONCLUSION

For the foregoing reasons, the Court grants Defendants' motion for a bill of particulars (Dkt. 80).  The Government must file its bill of particulars with the disclosures outlined above within 21 days.

SO ORDERED.

Dated:  June 25, 2024               s/Mark A. Goldsmith
Detroit, Michigan                   MARK A. GOLDSMITH
                                    United States District Judge