UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,

v.

SHERIF KHALIL et al.,

       Defendants.
_____/

Case No. 22-cr-20200

HON. MARK A. GOLDSMITH

**OPINION & ORDER
REGARDING MOTIONS IN LIMINE FILED BY (1) THE GOVERNMENT (Dkts. 182, 202); (2) DEFENDANT SHERIF KHALIL (Dkts. 181, 194); AND (3) DEFENDANT ALI SAAD (Dkt. 183)**

The parties have filed several motions in limine.[1] Having conducted motion hearings on November 25, 2024 and December 3, 2024, the Court now rules as to the merits of some of the issues raised. As to other issues, the Court either indicates that development at trial is needed before a ruling can be made or orders further submissions from the parties.

---

[1] The motions and briefing include (i) Defendant Sherif Khalil's omnibus motion in limine (Dkt. 181), the Government's response (Dkt. 186), and Khalil's reply (Dkt. 190); (ii) the Government's omnibus motion in limine (Dkt. 182), Khalil's response (Dkt. 185), Defendant Ali Saad's response (Dkt. 187), and the Government's reply (Dkt. 189); (iii) Saad's omnibus motion in limine (Dkt. 183), the Government's response (Dkt. 186), and Saad's reply (Dkt. 191); (iv) Khalil's supplemental motion in limine (Dkt. 194), the Government's response (Dkt. 203), and Khalil's reply (Dkt. 208); and (v) the Government's supplemental motion in limine (Dkt. 202) and Khalil's response (Dkt. 207).

Defendant Nancy Harris filed a notice of joinder/concurrence to Khalil's omnibus motion and reply (Dkt. 204) and supplemental motion in limine and reply (Dkt. 205). Defendant Ali Saad filed a notice of joinder/concurrence to Khalil's omnibus motion in limine (Dkt. 206).

## I. RULINGS

**A. Government's Omnibus Motion in Limine (Dkt. 182)**

The Government's omnibus motion consists of eight separately numbered motions, each of which is considered in turn.

**Motion One**

The Government argues that Defendants should be precluded from offering evidence of any legitimate medical billings, i.e. testing that was medically necessary. It claims this kind of "good conduct" evidence is not relevant, arguing that some proper testing does not show that Defendants did not commit fraud by submitting claims for other tests that were not medically necessary. Defendants counter that the evidence of legitimate billings should be allowed to refute the Government's contention that virtually all of the billings were for medically unnecessary services.

The Court will deny this motion without prejudice because the proofs at trial may demonstrate the propriety of Defendants offering evidence that their billings were always, or almost always, legitimate. Certainly, if the Government does present evidence or argues that virtually all of the billings were illegitimate, the defense would be allowed to counter that. If the Government is more focused in its evidence and argument—i.e. referencing only a smaller universe of submitted claims—the defense position on relevance is weakened. And even if the defense argument for relevance still holds in that circumstance, the type and volume of evidence may be subject to challenge under FRE 403. The objection may be renewed at trial.

**Motion Two**

The Government seeks to preclude Defendants from referencing allegedly false claims that Medicare nonetheless paid. The Government says this is a "blame the victim" technique, which

fails the test of relevance. Defendants argue that payment of the claims is relevant to Defendants' state of mind.

The Court will deny the motion without prejudice. Depending on the details of how and why these claims were paid, such facts might bear on state of mind. The objection may be renewed at trial, when the factual context is clarified.

**Motion Three**

The Government seeks to preclude the defense from offering evidence or argument about non-parties who were not charged. The defense says that the failure to charge a relative of a witness is a fact relevant to impeaching the witness. The Court agrees with the Government, but with the carve-out urged by the defense.

**Motion Four**

The Government seeks to preclude evidence or argument that Defendants complied with the safe-harbor provisions contained in the Anti-Kickback Statute (AKS). While the Government says that Defendants cannot lay a foundation for invoking those provisions, Defendants counter that they will not invoke the statute's safe-harbor provisions. At the same time, the defense says that Khalil's knowledge of Spectra Clinical Lab's compliance with the safe harbor provisions has a tendency to prove that he believed that commission-based payments to marketers were lawful.

The Court denies the motion without prejudice. Whether the defense can make out the prerequisites of the safe harbor provisions is not something the Court can determine before it has heard evidence. And given that the defense says Khalil's knowledge about the provisions may disprove wrongful intent, the Court should give him latitude to prove that up.

3

**Motion Five**

The Government seeks a ruling that it may offer physician testimony regarding "historical facts." Paradoxically, it argues that "[s]uch factual testimony will necessarily include medical or clinical opinions for patients that the Physician Witnesses treated, involving applying their specialized training to that experience." The defense argues that such testimony is in the heartland of opinion testimony, citing United States v Lang, 717 F. App'x 523, 537 (6th Cir. 2007) (characterizing as "classic expert testimony" a treating physician's opinion "on why a physician wrote a specific prescription and why the patient needed it").

The Court denies the motion. The Government's physician witnesses can testify to historical facts only, such as whether they ordered particular tests, or whether the test performed was the test ordered. But asking them whether "certain aspects of treatment were medically necessary" is "classic expert testimony." If the Government had wanted to elicit such testimony, it should have complied with the notice and disclosure requirements of Rule 16 of the Federal Rules of Criminal Procedure, which it has acknowledged that it has not.

**Motion Six**

The Government moves to admit coconspirator statements. The Court will issue a separate opinion and order regarding that.

**Motion Seven**

The Government seeks to preclude the use of law enforcement agent reports and notes for impeachment. The briefing back and forth clarifies that the parties agree that a witness can be asked, on cross examination, about a statement that the witness appears to have made and was reported by the agent in the materials. They also agree that the agent who prepared the materials

4

could testify to establish that a statement that is inconsistent with the witness's trial testimony was made to the agent. The parties disagree about the process for the bringing the agent in to testify.

The Court agrees that the materials may be used in the manner agreed to by the parties. The attorneys must confer in an effort to agree on a process that will minimize delay at trial and inconvenience to the agents. If no agreement is reached by the next conference, scheduled for December 13, 2024, the Court will resolve any remaining dispute over the process at the conference.

**Motion Eight**

The Government seeks to preclude evidence on several miscellaneous topics: the Government's decision to call or not call a particular witness; discovery disputes; encouragement of jurors to ignore the law; defense plea negotiations; potential punishment; accusation of prosecutorial misconduct; and counsel vouching for witnesses. The defense brief only takes issue with the first topic, arguing that such a restriction could restrict the defense argument that the Government has not met its burden of proof.

The Court grants the motion except as to the first topic. It would be difficult in a vacuum to attempt to define what are acceptable and unacceptable arguments based on who was, or was not, called by the Government. To the extent the Government wishes to challenge a defense argument regarding the failure to call a witness, it can seek a ruling at the time of closing arguments.

B. Khalil's Omnibus Motion in Limine (Dkt. 181)

**Motion One**

The defense moves to exclude testimony regarding physician and employee remuneration. The defense contends that the amended indictment and Government briefing on different motions have described the charge in Count I as premised on payments made to marketers—not payments made to physicians or their personnel. The Government says the payments will show "undue influence," rather than payments that per se trigger the AKS. The defense replies that there is a danger of jury confusion and constructive amendment of the indictment.

The Court agrees with the defense that there is a danger of confusion. To properly balance Federal Rule of Evidence 403 considerations, the Court needs more information about the alleged payment to physician personnel. Government statements at the hearing suggested that the amounts were few and in low amounts, but few details were supplied. The Government must file an offer of proof setting forth the following information: the amount of every payment, the date of the payment, the person making the payment, and the person to whom the payment was made. If testimony at trial would not be that specific, then the Government must present as many details of payments as will be presented at trial.

Saad raises a similar argument in his motion (Dkt. 183), arguing that neither he nor any marketer was involved in the leasing of premises from a physician's office that was not commercially reasonable or that exceeded fair market value. In an offer of proof, the Government must set forth the facts demonstrating the manner in which any lease was commercially unreasonable and the amount by which any lease exceeded fair market value.[2]

---

[2] Another request raised in the Saad motion is to bar reference to a business trip he took with Andrea Castronova to Dallas. The Government has agreed not to mention Castronova's comment

6

The offers of proof required in regard to this motion must be filed December 11, 2024 at noon.

**Motion Two**

The defense moves to bar evidence that Defendants did not comply with "safe harbor" provisions.  The Government argues that it bears on Defendants' knowledge of the unlawfulness of their actions.  The Court will deny this motion without prejudice.  Until the Court hears the testimony at trial, it is difficult to ascertain whether such testimony does or does not properly bear on Defendants' state of mind.

**Motion Three**

The defense moves to bar evidence of witnesses' beliefs that paying marketers by commission was improper.  The Government argues that this will bear on the Defendants' intent.

The Court will deny this motion without prejudice.  As with motion two, the Court cannot make a definitive ruling until it hears the testimony.

**Motion Four**

The defense moves to bar factual bases of guilty pleas.  The Government says that the testimony is admissible to assess a witness's credibility.

The Court will grant this motion in part.  The jury may hear the charges to which a witness has pled and enough of the factual context so the jury can understand the meaning of the guilty plea.  But the testimony cannot be utilized to show substantive guilt of the Defendants in this case, and the Court will consider giving a limiting instruction proposed by the parties, if necessary.

---

that the setting seemed "shady."  The Government can reference the trip only to show Castronova's business involvement with Saad.

**Motion Five**

The defense moves to bar certain evidence regarding comprehensive testing: (i) Medicare data showing "high" volumes of comprehensive testing claims, (ii) compliance officer Andrea Merrit Castronova's testimony that she informed one or more Defendants that comprehensive testing should be "rare," and (iii) testimony from law enforcement that the high volumes of comprehensive testing contributed to the charging decision.

The Government says that Medicare representatives will testify as to "whether Medicare reimbursement rules contemplate reimbursing claims for 'comprehensive' urine drug testing at the volume billed by Spectra." Govt Resp. to Khalil's Omnibus Mot. at 11 (Dkt. 186). The Government also says that the Castronova testimony goes to Defendants' state of mind. Further, it says that testimony about the charging decision refutes a potential defense attack on the sufficiency of the investigation.

The Court does not understand the Government's argument about Medicare rules "contemplating" reimbursements at the volume billed by Spectra. The Government must file an offer of proof setting forth with specificity the expected testimony as to that point. As for the second issue, it would appear that any such testimony might bear on Defendants' state of mind, and thus would be admissible.

As for the third issue, the Government will not be allowed to offer any such evidence unless and until the defense does, in fact, attack the sufficiency or reasonableness of the investigation. In that regard, the Court advises the parties that attacks on criminal investigations are permitted in limited circumstances, such as mishandling or fabrication of evidence. See United States v. Bell, No. CR 17-20183, 2022 WL 1214157, at *2 (E.D. Mich. Apr. 25, 2022). Because the defense may

8

not seek to attack the investigation, or may be blocked from doing so by the Court if not appropriate, the Government will not be allowed to open a door that may remain firmly shut.

**Motion Six**

Defendants seek to exclude evidence that Spectra Clinical Labs was required to collect supporting documentation from physicians for the testing claims submitted for reimbursement. The Government says Castronova's testimony regarding documentation will show that Defendants were put on notice of how to avoid submitting false claims.

The Court denies the motion. Castronova was hired to assist in regulatory compliance; what she told the people for whom she worked may well bear on whether they believed they were acting within or outside the law. Without more details and context, the Court cannot say that the testimony should be barred.

**Motion Seven**

Defendants wish to exclude testimony about witnesses' beliefs about Khalil's state of mind and his relationship with Saad. The motion is not entirely clear on what it seeks to block. Although the defense sets out its version of what witnesses may say at trial, see Khalil Omnibus Mot. at 20, n. 8–10, there is no firm record from which the Court could make a pre-trial ruling. The Court denies the motion without prejudice. The defense may object once a witness testifies.

**Motion Eight**

Defense wishes to exclude certain terms—recruiter, kickback, and bribe—which it claims are unfairly prejudicial. The Court agrees that the term "marketer" will be used instead of "recruiter." The term "kickback" or "bribe" will only be used in opening statement, closing argument, or questioning of witnesses, when reference is being made to statutory language or language used or heard by a witness.

9

**Motion Nine**

Defendants object to the Government referencing the total amount billed to Medicare, some $69 million, given that Defendants received only $5.4 million. The Court agrees that the higher number has no probative value, given that all agree the billed amount was never understood to be the amount that would be paid. The Government may reference the lower number.

### C. Khalil's Supplemental Motion in Limine (Dkt. 194)

Khalil contends that two Government witnesses—Amber Mayo and Castronova—should be precluded from giving what he claims are opinions, on the grounds that they are not qualified to do so. The Government says that they are qualified.

The Court's difficulty in assessing the motion is that the disclosures served by the Government set forth numerous bullet points—which purport to be opinions—but which are, with three exceptions, only topics, not opinions. The three exceptions have to do with "medical necessity": that a beneficiary must qualify for a test, that the test must be reasonable and medically necessary, and that supporting documentation must be maintained. Even as to these opinions, there has been no compliance with Federal Rule of Criminal Procedure 16, i.e. "a complete statement of all opinions," along with "the bases and reasons for them."

It may be that some or all of this testimony will no longer be offered, given the Government's statements at the December 3, 2024 hearing that the term "medical necessity," as used in the amended indictment, is a term of art that has nothing to do with a medical judgment or determination. Rather, according to the Government, the term refers only to (i) tests that were never ordered, (ii) orders for tests that were altered, or (iii) the "manipulation" of physician personnel to order tests that physicians did not "want." Nonetheless, if the Government intends to

proceed with the testimony, it must make disclosures consistent with Rule 16. An amended disclosure as to Mayo and Castronova must be filed by December 11, 2024 at noon.

### D. Government's Supplemental Motion in Limine (Dkt. 202)

The Government seeks to preclude Dr. James Patrick Murphy's expert testimony about medical laboratories, because he has no experience managing one. For that reason, the Government argues that he cannot opine, as he is expected to do, regarding the following points: (i) labs do not have the ability or responsibility to determine whether a testing order is reasonable and medically necessary, (ii) labs have no access to patient files, (iii) physicians often cannot provide patient files due to privacy laws, (iv) a lab director may not have the medical expertise to determine whether a test is medically necessary, and (v) a lab that refused to conduct a test could jeopardize patient health. Khalil responds by claiming that Dr. Murphy has acceptable experience.

The Court is not sure whether Dr. Murphy's testimony regarding laboratories will still be relevant, given the Government's statement on "medical necessity" at the December 3 hearing, noted above. The parties must each file a memorandum explaining whether Dr. Murphy's testimony on this topic is still relevant and material. This is due December 11, 2024 at noon.

## II. CONCLUSION

In conclusion, all Government filings ordered above are due December 11, 2024 at noon. If any Defendant wishes to file a response touching on any filing by the Government pursuant to this opinion and order, the defense filing is due by December 12, 2024 at 2 p.m.

SO ORDERED.

Dated: December 5, 2024   s/Mark A. Goldsmith
Detroit, Michigan         MARK A. GOLDSMITH
                          United States District Judge